UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DIANNE B. BRETTON                                CIVIL ACTION

VERSUS                                           NO: 13-663

COMPASS CAREER MANAGEMENT, LLC                   SECTION: R(5)

**ORDER AND REASONS**

Defendant Compass Career Management, LLC moves for summary judgment on plaintiff Dianne Bretton's claims and on one of its counterclaims.[1]  For the following reasons, the Court grants defendant's motion as to plaintiff's Fair Labor Standards Act claim.  The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims and defendant's state-law counterclaims and dismisses them without prejudice.

**I. Background**

This case arises from plaintiff Diane Bretton's employment with defendant Compass Career Management, LLC.

Defendant operates Compass Career College, a state approved proprietary school of vocational learning that concentrates on the fields of allied health, practical nursing, and cosmetology.[2] Compass is licensed by the Louisiana State Board of Regents and

---

[1]   R. Doc. 21.

[2]   R. Doc. 21-2 at 1.

nationally accredited by the Council on Occupational Education.[3]

Plaintiff is a registered nurse.[4] Compass employed plaintiff as a Practical Nurse Instructor beginning on July 1, 2009. On March 28, 2011, plaintiff became Program Coordinator of the Practical Nursing program. At all times during her employment with Compass, plaintiff was employed as an instructor with a primary duty of teaching and instructing with regard to Compass's nursing program.[5]

As a condition of plaintiff's employment, defendant required plaintiff to sign a confidentiality and non-competition agreement.[6] The non-competition agreement provided that plaintiff could not accept employment with another school for a period of one year following termination of plaintiff's employment.[7]

According to plaintiff's complaint, plaintiff believed Compass was not in compliance with various requirements for instruction promulgated by the Louisiana State Board of Practical Nurse Examiners.[8] Plaintiff alleges that she observed several violations

---

[3]  *Id.*

[4]  *Id.*

[5]  *Id.*

[6]  R. Doc. 1 at 2; R. Doc. 21-2 at 2.

[7]  R. Doc. 1 at 2; R. Doc. 21-5 at 10.

[8]  R. Doc. 1 at 3.

in June 2012.[9]  On June 22, 2012, plaintiff allegedly called Compass and gave two weeks notice of her resignation.[10]  Plaintiff further alleges that she hand-delivered her letter of resignation to Sara Moore Dugas and Leslie Moore, Compass employees, on June 25, 2012, and that her letter specified an effective date of July 6, 2012.[11]  Plaintiff alleges that Leslie Moore warned her about "going to the Board of Nursing."[12]

On June 28, 2012, Compass terminated plaintiff.[13]  Compass's notification to the Louisiana Workforce Commission provided the following reason for termination: plaintiff "was not following instructions and refused to implement agreed changes to paperwork [and] teaching documents."[14]  The notification further stated: "employee entered building after hours and wiped out hard drive on company computer."[15]  Plaintiff now contends that she deleted only items from the hard drive which were her personal property.[16]

---

[9]  *Id.* at 4.

[10]  *Id.* at 5.

[11]  R. Doc. 1 at 5; *see* R. Doc. 24, Ex. 3.

[12]  R. Doc. 1 at 5.

[13]  *Id.*; R. Doc. 21-2 at 2.

[14]  R. Doc. 24, Ex. 8.

[15]  *Id.* at Ex. 10.

[16]  R. Doc. 24-1 at 2.

On the same day Compass terminated plaintiff, plaintiff sent a letter via fax to Compass demanding outstanding pay from June 16 through July 6, 2012, and for thirty-two hours of vacation pay.[17] In a letter dated June 29, 2012, Compass denied plaintiff's request for vacation pay, stating that Compass owed plaintiff no vacation pay per its company vacation policy.[18]

On July 5, 2012, Compass issued plaintiff a refund check in the amount of $137.07 for money she had paid via payroll deduction for her August health insurance premium, which became an overpayment because of her discharge.[19] On July 10, 2012, Compass issued plaintiff a paycheck in the amount of $1237.37 for 50.28 hours worked for the period of June 16-30, 2012.[20] Also on July 10, 2012, Compass issued plaintiff a paycheck in the amount of $133.77 for nine hours worked for the period of June 16-30, 2012.[21]

Plaintiff filed this action against defendant on April 10, 2013, claiming violations of the Fair Labor Standards Act (FLSA) and various state laws.[22] Defendant answered plaintiff's complaint on July 2, 2013, and also asserted state-law counterclaims against

---

[17]   R. Doc. 24, Ex. 5.

[18]   *Id.* at Ex. 7.

[19]   R. Doc. 21-2 at 2.

[20]   *Id.*

[21]   *Id.*

[22]   R. Doc. 1.

plaintiff and her husband, John Bretton, for defamation, interference with a business relationship, unfair trade practices, trespass, conversion, and theft of trade secrets.[23]

In total, plaintiff states five claims. First, plaintiff alleges that defendant violated the FLSA by failing to pay her at the rate of time and one-half for the overtime hours she worked.[24] Plaintiff alleges that she worked at least three hours of overtime per day, five days per week, but was not paid time and one-half for the overtime hours.[25] Second, plaintiff alleges defendant violated the Louisiana Whistleblower Law, La. R.S. 23:967(a), by retaliating against her for threatening to disclose a workplace act or practice in violation of state law.[26] Third, plaintiff alleges that defendant violated La. R.S. 23:631 by failing to pay unpaid wages.[27] Fourth, plaintiff alleges that defendant engaged in unfair and deceptive acts affecting trade or commerce by enforcing a legally insufficient non-competition agreement in violation of the

---

[23]  R. Doc. 6.

[24]  R. Doc. 1 at 7.

[25]  *Id.* at 6.

[26]  *Id.* at 8.

[27]  *Id.* at 9.

Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq*.[28] Fifth, plaintiff alleges that defendant is liable for defamation.[29]

Defendant now moves for summary judgment on all claims raised by plaintiff and on its counterclaim for conversion.[30]

**II. Legal Standard**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B Charles

---

[28] *Id.*

[29] *Id.* at 10.

[30] R. Doc. 21.

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon

7

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

### III. Discussion

#### A. Fair Labor Standards Act Claim

The FLSA requires that employers pay their employees at a rate of at least one and one-half times their regular rate for the hours an employee works in excess of a forty-hour workweek. 29 U.S.C. § 207(a)(1). But employers do not have to pay time-and-a-half to individuals "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). The FLSA does not further define these "white-collar" exemptions. Instead, it delegates authority to the Secretary of Labor to promulgate rules that define these exemptions. *Id.* The white-collar exemptions are affirmative defenses to overtime pay claims. The employer bears the burden of proving that a plaintiff is properly classified as an exempt employee. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 865 (N.D. Tex. 2001).

The Secretary of Labor has promulgated regulations specifying that "[t]he term 'employee employed in a bona fide professional capacity' . . . also means any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed." 29 C.F.R. § 541.303(a). The term teacher includes "teachers of skilled and semi-skilled trades and occupations." *Id.* § 541.303(b). The salary requirements of § 541.300 do not apply to teaching professionals. *Id.* § 541.303(d). Whether an exemption applies rests on the nature of the employee's primary duty. An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700.

The term "educational establishment" includes "an institution of higher education." *Id.* § 541.204(b). "Factors relevant in determining whether post-secondary career programs are educational institutions include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools." *Id.*

The Court must examine (1) whether plaintiff was a teacher or instructor and, therefore, an exempt professional employee, and (2) whether Compass Career College was an educational establishment.

9

*See Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship Fund of Minnesota & N. Dakota*, No. CIV. 11-3653, 2012 WL 4838880, at *2 (D. Minn. Oct. 11, 2012).

The Court finds that plaintiff was a teacher and, therefore, an exempt professional employee. Importantly, the parties have stipulated: "At all times during her employment with Compass, [plaintiff] was employed as an instructor with a primary duty of teaching and instructing with regard to the occupation of nursing."[31]  Thus, there is no dispute that plaintiff's responsibilities consisted primarily of teaching and instructing. This alone is sufficient to find that plaintiff was "employed in a bona fide professional capacity." *See* 29 C.F.R. § 541.303(a) ("The term 'employee employed in a bona fide professional capacity' . . . also means any employee with a *primary* duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge . . . .") (emphasis added).

Plaintiff contends that she was a non-exempt employee because she also engaged in "administrative duties" as the Program Coordinator of the Practical Nursing Program.[32] Plaintiff testified that as Program Coordinator, she "[h]ad to deal with the Louisiana Board of Practical nurses, lesson plans, tests, making sure everything--the other instructors had everything they needed, make

---

[31]   R. Doc. 24-1 at 1; R. Doc. 21-2 at 1.

[32]   R. Doc. 24 at 1.

sure clinicals were arranged."[33]  Plaintiff also stated that she performed both classroom and clinical instruction as the Program Coordinator.[34]

That plaintiff also performed administrative work related to her position as Program Coordinator does not demonstrate that she was not an exempt employee.  When an employee performs multiple functions, courts must ascertain the employee's "primary duty" to determine whether she qualifies for exempt status.  29. C.F.R. § 541.700.  An employee's primary duty is teaching if it is "the principal, main, major or most important duty that the employee performs."  *Id.*  Here, it is undisputed that "[a]t all times during her employment with Compass, [plaintiff] was employed as an instructor with a *primary duty* of teaching and instructing with regard to the occupation of nursing."[35]  Plaintiff's assertion that she "also had administrative duties" does not demonstrate that these were her primary duties, especially in light of the uncontroverted stipulation showing the opposite.  Plaintiff does not even attempt to show that her primary duty was not teaching.  Plaintiff has therefore failed to demonstrate a genuine issue of material fact regarding whether teaching and instructing was her primary responsibility.

---

[33]   R. Doc. 21-6 at 7.

[34]   *Id.*

[35]   R. Doc. 24-1 at 1 (emphasis added); R. Doc. 21-2 at 1.

Plaintiff presents additional evidence to demonstrate that she was a non-exempt employee: (1) she was paid on an hourly basis; (2) on at least two occasions in 2012 she was paid overtime wages; (3) she was required to punch a time clock; and (4) defendant had a stated policy that plaintiff could work only thirty-two hours per week when she was an instructor and thirty-six hours per week when she was a Program Coordinator. These facts, however, have no bearing on whether plaintiff was exempt from overtime pay under the FLSA teacher exemption because the teacher exemption does not contain a salary test. *See* 29 C.F.R. § 541.303(d); *Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*, No. 12 Civ. 6854, 2014 WL 463616, at *2 (S.D.N.Y. Feb. 4, 2014).

The Court also finds that Compass is an "educational establishment" within the meaning of 29 C.F.R. § 541.204(b). As stated, the term includes "an institution of higher education," and "[f]actors relevant in determining whether post-secondary career programs are educational institutions include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools." 29 C.F.R. 541.204(b). Here, it is undisputed that Compass Career College is both licensed by a state agency responsible for the state's educational system and accredited by a nationally recognized accrediting organization for career schools. Specifically, plaintiff does not dispute that

Compass Career College "is licensed by the Louisiana State Board of Regents and nationally accredited by the Council on Occupational Education."[36] The Louisiana State Board of Regents is a state agency responsible for Louisiana's educational system, *see* La. Const. art. VIII, §5, and the Council on Occupational Education is a nationally recognized accrediting organization for career schools, *see In re Decker College, Inc.*, 578 Fed. Appx. 579, 580 (6th Cir. 2014) (noting that the Council on Occupational Education is a United States Department of Education-recognized accrediting agency); *United States v. Lekhtman*, No. 08-CR-508, 2009 WL 5095379, at *6 (E.D.N.Y. Dec. 15, 2009) (noting that the Council on Occupational Education is a "national accrediting agency"); United States Department of Education List of Regional and National Institutional Accrediting Agencies, *available at* http://www2.ed.gov/admins/finaid/accred/accreditation_pg6.html. Therefore, the record demonstrates that Compass is both licensed by a state agency responsible for the state's educational system and accredited by a nationally recognized accrediting organization for career schools. Accordingly, there is no genuine issue of material fact that defendant operates an "educational establishment" within the meaning 29 C.F.R. 541.204(b).

Because there is no genuine issue of material fact that plaintiff was employed as a teacher in an educational

---

[36]   R. Doc. 21-2 at 1; R. Doc. 24-1 at 1.

establishment, plaintiff was exempt from overtime pay under the FLSA teacher exemption. Plaintiff therefore cannot sustain a claim for violation of the FLSA based on defendant's failure to pay her overtime wages. Accordingly, defendant's motion for summary judgment seeking dismissal of plaintiff's FLSA claim is granted.

### B. State-Law Claims

The Court has determined that defendant is entitled to summary judgment on the sole claim arising under federal law in this case. Defendant, however, seeks summary judgment on a number of plaintiff's claims arising under state law and on its counterclaim arising under state law. Defendant has also asserted additional state-law counterclaims not at issue in its motion for summary judgment. Thus, the Court must consider whether to continue to exercise supplemental jurisdiction over plaintiff's and defendant's remaining state-law claims and state-law counterclaims. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to the statutory factors, the Court must also balance the factors of judicial economy, convenience, fairness, and comity. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002). The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Still, the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been eliminated prior to trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Here, the Court has dismissed the only claim over which it had original jurisdiction. Only state-law claims and counterclaims remain, and the Court has no independent basis for jurisdiction over them. The Court has not yet addressed the merits of these claims, and as they exclusively involve issues of state law, principles of comity weigh in favor of allowing a state forum to adjudicate them. The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims when no federal claims remain applies in this case, and it dismisses plaintiff's state-law claims and defendant's state-law counterclaims without prejudice.

**IV. Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment as to plaintiff's federal claim under the FLSA. The Court dismisses without prejudice plaintiff's state-law claims and defendant's state-law counterclaims.


New Orleans, Louisiana, this __26th__ day of January, 2015.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE